**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ADARA ENTERPRISES CORP., | Case No. 21-_____ (____) |
| Debtor. [1] | |

**PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION
OF ADARA ENTERPRISES CORP.**

Daniel Besikof, Esq. (admitted *pro hac vice*)
Bethany Simmons, Esq. (admitted *pro hac vice*)
**LOEB & LOEB LLP**
345 Park Avenue
New York, NY 10154
Telephone: (212) 407-4000
Facsimile:  (212) 407-4990

Ronald S. Gellert (DE 4259)
**GELLERT SCALI BUSENKELL
& BROWN, LLC**
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 425-5806
Facsimile:  (302) 425-5814

*Proposed Counsel to the Debtor and Debtor in Possession*

April 21, 2021

---

[1]    The last four digits of the Debtor's federal tax identification number are 8502. The Debtor's address is 411 E 57th Street Suite 1-A, New York, New York 10022.

## TABLE OF CONTENTS

Page

ARTICLE I SUMMARY OF THE PLAN ................................................................. 1

ARTICLE II DEFINITIONS, RULES OF INTERPRETATION, AND
         CONSTRUCTION OF TERMS .................................................. 1

ARTICLE III DESIGNATION OF CLAIMS AND EQUITY INTERESTS............................. 2

    3.1    Summary .................................................................................. 2

    3.2    Identification of Classes ............................................................ 3

    3.3    Elimination of Classes for Voting Purposes .................................. 3

    3.4    Voting Classes; Deemed Acceptance by Voting Classes .................... 3

    3.5    Controversy Concerning Classification, Impairment, or Voting Rights............... 3

    3.6    Intercompany Claims ................................................................ 4

ARTICLE IV TREATMENT OF UNCLASSIFIED CLAIMS........................................... 4

    4.1    Administrative Claims .............................................................. 4

    4.2    Professional Compensation Claims ............................................. 5

    4.3    U.S. Trustee Fees .................................................................... 5

    4.4    Allowed Priority Tax Claims ..................................................... 6

    4.5    Ordinary Course Liabilities........................................................ 6

ARTICLE V CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
         AND EQUITY INTERESTS .................................................... 7

    5.1    Treatment of Allowed Claims and Interests ................................. 7

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN........................................ 9

    6.1    Continued Corporate Existence ................................................. 9

    6.2    Management, Board of Directors, and Discharge of Board of Directors ............ 10

    6.3    Arrangements with the Distribution Trustee.................................. 10

    6.4    The Closing........................................................................... 10

    6.5    Tax Treatment of the Distribution Trust ...................................... 13

    6.6    Preservation of Rights of Action................................................. 13

    6.7    Insurance ............................................................................... 14

ARTICLE VII PROVISIONS GOVERNING RESOLUTION OF CLAIMS  AND
         DISTRIBUTIONS OF PROPERTY UNDER THE PLAN.................. 14

    7.1    Right to Object to Claims .......................................................... 14

    7.2    Deadline for Objecting to Claims ................................................ 15

7.3     Right to Request Estimation of Claims.................................................................... 15

7.4     Distribution Procedures Regarding Allowed Claims and Equity Interests.......... 15

7.5     Procedures Regarding Distributions from the Distribution Trust........................ 18

ARTICLE VIII EXECUTORY CONTRACTS............................................................................. 18

8.1     Assumption of Executory Contracts ..................................................................... 18

8.2     Rejection of Executory Contracts ......................................................................... 18

8.3     Procedures Related to Assumption of Executory Contracts ................................ 19

8.4     Rejection Claim Bar Date ..................................................................................... 20

8.5     Indemnification Obligations ................................................................................. 21

ARTICLE IX EFFECT OF REJECTION BY ONE OR MORE CLASSES ............................ 21

9.1     Impaired Classes Entitled to Vote........................................................................ 21

9.2     Acceptance by Class ............................................................................................. 21

9.3     Reservation of Cramdown Rights ......................................................................... 21

ARTICLE X EFFECT OF CONFIRMATION............................................................................ 22

10.1    Legally Binding Effect.......................................................................................... 22

10.2    Vesting of Property of Debtor in Reorganized Debtor ........................................ 22

ARTICLE XI INJUNCTIONS, RELEASES, AND DISCHARGE ........................................... 22

11.1    Discharge of the Debtor ....................................................................................... 22

11.2    Discharge Injunction ............................................................................................ 23

11.3    Exculpation and Limitation of Liability .............................................................. 23

11.4    Releases by the Debtor.......................................................................................... 24

11.5    Releases by Third Parties...................................................................................... 24

ARTICLE XII RETENTION OF JURISDICTION ................................................................... 25

12.1    Bankruptcy Court Jurisdiction ............................................................................. 25

12.2    Limitation on Jurisdiction .................................................................................... 26

ARTICLE XIII MISCELLANEOUS PROVISIONS ................................................................. 27

13.1    Conditions to Confirmation ................................................................................. 27

13.2    Conditions to Effectiveness ................................................................................. 27

13.3    Exemption from Taxes.......................................................................................... 28

13.4    Securities Exemption ............................................................................................ 28

13.5    Defects, Omissions and Amendments of the Plan ............................................... 28

13.6    Withdrawal of Plan ............................................................................................... 29

ii

13.7    Due Authorization By Holders of Claims and Equity Interests............................ 29

13.8    Filing of Additional Documentation ................................................................... 29

13.9    Governing Law ................................................................................................... 30

13.10   Successors and Assigns....................................................................................... 30

13.11   Transfer of Claims and Equity Interests .............................................................. 30

13.12   Notices ............................................................................................................... 30

13.13   Implementation ................................................................................................... 32

13.14   No Admissions.................................................................................................... 32

ARTICLE XIV SUBSTANTIAL CONSUMMATION ............................................................. 32

14.1    Substantial Consummation .................................................................................. 32

14.2    Final Decree ....................................................................................................... 32

20602235.4
237312-10001

## EXHIBITS TO THE PLAN

Glossary of Defined Terms...................................................................................Exhibit A
Schedule of Assumed Contracts and Unexpired Leases..................................................Exhibit B
List of Debtor Subsidiaries Remaining in Effect as Reorganized Debtor Interests...........Exhibit C

Adara Enterprises Corp., the debtor and debtor in possession in the above-referenced Chapter 11 Case, proposes this Prepackaged Chapter 11 Plan of Reorganization of Adara Enterprises Corp., dated April 21, 2021. Reference is made to the Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Adara Enterprises Corp., dated April 21, 2021, for a discussion of the Debtor's history, business, property, and results of operations, and for a summary of the Plan and certain related matters.

ALL CREDITORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

FOR AVOIDANCE OF DOUBT, THE PLAN APPLIES AND PRESERVES THE MAXIMUM GLOBAL JURISDICTION POSSIBLE UNDER APPLICABLE U.S. LAW, INCLUDING, WITHOUT LIMITATION, OVER THE ASSETS OF THE DEBTOR WHEREVER LOCATED.

## ARTICLE I
## SUMMARY OF THE PLAN

An overview of the Plan is set forth in the Disclosure Statement. Generally, the Plan provides for (1) the reorganization of the Debtor by retiring, cancelling, extinguishing, and/or discharging the Debtor's prepetition Other Equity Interests and issuing (i) 50% of the New Equity in the Reorganized Debtor to the Preferred Equity Interest Holder in exchange for the Preferred Equity Interests, (ii) issuing 50% of the New Equity to the Prepetition Secured Lender, in exchange for a portion of the Prepetition Secured Lender Claim; (2) the remittal of the Consideration to the Debtor on the Effective Date; and (3) the distribution of the Consideration to holders of Allowed Claims and Other Equity Interests in accordance with the priority scheme established by the Bankruptcy Code or as otherwise agreed.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS

2.1    All capitalized terms not defined elsewhere in the Plan shall have the meanings assigned to them in the Glossary of Defined Terms attached as Exhibit A to the Plan. Any capitalized term used in the Plan that is not defined herein has the meaning ascribed to that term in the Bankruptcy Code and/or Bankruptcy Rules.

2.2    For purposes of the Plan: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a holder of a Claim or

Equity Interest includes that entity's successors and assigns; (5) unless otherwise specified, all references in the Plan to articles or sections are references to the articles or sections of the Plan; (6) the words "herein," "hereof," and "hereto" and other words of similar import refer to the Plan in its entirety rather than to any particular section, subsection, clause, or portion of the Plan, unless the context requires otherwise; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, formation document, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean such statutes, regulations, orders, rules of courts, and the like as applicable to the Chapter 11 Case, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtor after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Plan all without further order of the Bankruptcy Court; (14) any act required to be taken on the Effective Date, or any other applicable date, shall be deemed timely taken if taken as soon as reasonably practicable after such date; and (15) all references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided; and (16) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable.

    **2.3**    All Plan Documents and exhibits to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. Holders of Claims and Equity Interests may inspect a copy of the Plan Documents, to the extent Filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours.

## ARTICLE III
## DESIGNATION OF CLAIMS AND EQUITY INTERESTS

### 3.1    Summary

    Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Equity Interest qualifies within the description of that Class; (ii) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest (or temporarily allowed Claim or Equity Interest for voting purposes) in that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Class or Classes; and (iii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date. A Claim or Equity Interest

which is not an Allowed Claim or Allowed Equity Interest, including a Disputed Claim, is not in any Class, and, notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan and are excluded from the following Classes.

### 3.2    Identification of Classes

The following table designates the Classes of Claims against and Equity Interests in the Debtor and specifies which Classes are (a) impaired or unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Prepetition Secured Lender Claim | Impaired | Yes |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 5 | Preferred Equity Interests | Impaired | Yes |
| Class 6 | Other Equity Interests | Impaired | Yes |

### 3.3    Elimination of Classes for Voting Purposes

Any Class of Claims or Equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Equity Interest, or a Claim or Equity Interest temporarily allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 3.4    Voting Classes; Deemed Acceptance by Voting Classes

If a Class contains Claims or Equity Interests eligible to vote and no holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

### 3.5    Controversy Concerning Classification, Impairment, or Voting Rights

In the event a controversy or dispute should arise involving issues related to the classification, impairment, or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 Case and (ii) any right to payment arising from an equitable remedy for breach of performance.

20602235.4
237312-10001

### 3.6    Intercompany Claims and Intercompany Interests

Notwithstanding anything to the contrary herein, any and all Intercompany Claims shall be treated as General Unsecured Claims.  The intercompany claim owed to GlassBridge shall be fixed in an Allowed General Unsecured Claim in the amount of $1,190,538, without the need for GlassBridge to file any proof of claim; provided that nothing in this Plan prevents GlassBridge from filing a proof of claim, including for amounts in excess of $1,190,538.

For the avoidance of doubt, the Debtor's interests in its non-debtor subsidiaries identified in Exhibit C hereto shall be unaffected by the Plan and shall remain in effect as interests of the Reorganized Debtor following the Effective Date.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

### 4.1    Administrative Claims

(a)    General: Except with regard to the Ordinary Course Liabilities (the treatment of which is described in Section 4.5 (below)), subject to the bar date provisions herein, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive, from the Distribution Reserve, Cash equal to the unpaid portion of such Allowed Administrative Claim within ten (10) days after the later of (a) the Effective Date, (b) the Allowance Date, or (c) such other date as is mutually agreed upon by the Debtor, the Plan Sponsor, and the holder of such Claim.

(b)    Bar Date for Administrative Claims: Except as otherwise provided in this Article IV, requests for payment of Administrative Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Debtor, the Distribution Trust, and Plan Sponsor no later than the Administrative Claim Bar Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. Holders of Administrative Claims that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor, the Reorganized Debtor, the Plan Sponsor, or the Distribution Trust, or any of their respective property, absent order of the Bankruptcy Court to the contrary.

(c)    Payment of Restructuring Expenses.  The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Case) in accordance with, and subject to, the terms of the RSA, without any requirement to: (a) file a proof of Administrative Claim, (b) fee application with the Bankruptcy Court or have Bankruptcy Court review or approval or (c) itemize time detail.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtor at least five (5) Business Days before the anticipated Effective Date; provided, however, that such estimates

4

shall not be considered an admission or limitation with respect to such Restructuring Expenses. No later than thirty (30) days following the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtor.  In addition, the Debtor and the Distribution Trust (as applicable) shall continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date.

### 4.2    Professional Compensation Claims

All applications for Professional Compensation Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtor, the Distribution Trustee, the U.S. Trustee, and the Post-Confirmation Service List no later than thirty (30) days after the Effective Date. **FAILURE TO FILE AND SERVE FINAL FEE APPLICATIONS TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING PROFESSIONAL FEE CLAIMS BEING FOREVER BARRED AND DISCHARGED.** Objections to Professional Compensation Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than forty-five (45) days after the Effective Date or such other date as may be established by the Bankruptcy Court. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any applicable prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. All holders of Professional Compensation Claims shall be paid in full, in Cash from the Distribution Reserve, in such amounts as are Allowed by the Bankruptcy Court. The Reorganized Debtor and the Distribution Trustee are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

Each holder of a Professional Compensation Claim shall provide the Debtor with an estimate of the unpaid amount of such Professional Compensation Claim not later than seven (7) calendar days prior to the anticipated Effective Date; *provided, however*, that such estimates shall be used solely for administrative purposes and determining the amount of the Distribution Reserve, shall not be binding on the holders of Professional Compensation Claims and shall not in any way limit, cap, or reduce the amount of the Professional Compensation Claims.

Any professional fees and reimbursements of expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid by the Reorganized Debtor without application to the Bankruptcy Court. Any professional fees and reimbursements of expenses incurred after the Effective Date by (i) the Distribution Trustee or (ii) any professionals employed prior to the Effective Date by the Debtor, to the extent acting at the request of the Distribution Trustee, may be paid by the Distribution Trustee without application to the Bankruptcy Court.

### 4.3    U.S. Trustee Fees

The Debtor will pay any pre-confirmation fees owed to the U.S. Trustee on or as soon as reasonably practicable after the Effective Date of the Plan. After the Effective Date, the Distribution Trust will file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee; *provided*, *however*, that such reports shall reflect the disbursements of both the Reorganized Debtor and the Distribution Trust. Moreover, the Distribution Trust will pay any unpaid pre- and post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6); *provided*, *however*, that such quarterly fees shall be allocated between the Distribution Trust and the Reorganized Debtors proportionally to the disbursements of each of the that the Distribution Trust and the Reorganized Debtor during such period and within five business days after payment of such quarterly fees by the Distribution Trust, the Reorganized Debtor shall reimburse to the Distribution Trust its allocable share of such quarterly fees; *provided further* the Reorganized Debtor shall bear ultimate responsibility for payment of such fees should the Distribution Trust fail to timely pay any such fees.

Notwithstanding the foregoing, if the Reorganized Debtor pays any quarterly fees in excess of its proportional share as contemplated in the immediately preceding paragraph, the Distribution Trust shall be obligated to reimburse the Reorganized Debtor for such payment on a dollar-for-dollar basis to the extent of any such excess payment within five (5) business days of written notice by the Reorganized Debtor that such payment has been made. In addition, the Reorganized Debtor shall provide five (5) business days written notice to the Distribution Trust prior to paying any quarterly fees.

### 4.4    Allowed Priority Tax Claims

Each holder of an Allowed Priority Tax Claim against the Debtor shall receive in full and complete discharge of, and in exchange for, such Allowed Priority Tax Claim (i) Cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date or (ii) such other less favorable treatment to the holder of an Allowed Priority Tax Claim as to which the Debtor, the Plan Sponsor, and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

### 4.5    Ordinary Course Liabilities

(a)    All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent set forth in the Approved Budget. Holders of Administrative Claims on account of Ordinary Course Liabilities are not required to file or serve any request for payment of the Ordinary Course Liability. The Debtor shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability and the Approved Budget. To the extent that a holder of an Administrative Claim, on account of Ordinary Course Liability which accrued prior to the Effective Date, did not submit an invoice for the Ordinary Course Liability to the Debtor prior to the Effective Date, the holder must submit the invoice to the Distribution Trustee in the ordinary course of business pursuant to the terms and conditions of the particular transaction giving rise to the Ordinary Course Liability. The Distribution Trustee shall remit payment on the Ordinary Course Liability within fifteen (15) days of receipt of the invoice. In the event that the

6

Reorganized Debtor pays any Ordinary Course Liability accrued prior to the Effective Date, the Distribution Trust shall reimburse the Reorganized Debtor for such payment promptly upon request.

(b)    Accrued Adequate Protection Interest Payments and Post-Petition Financing.  On the Effective Date, in lieu of treatment as an Administrative Claim, all unpaid interest payments accrued by the Prepetition Secured Lender as Adequate Protection under the Cash Collateral/DIP Order shall be added to the Prepetition Secured Lender Claim and treated as such hereunder. Upon the Effective Date, any outstanding obligations of the Debtor under the DIP Facility shall be credited against the Consideration and, notwithstanding anything to the contrary set forth in the Plan, will not be repaid in Cash; provided that nothing herein shall negate or modify the obligation of the Debtor to repay all Restructuring Expenses in full in Cash.

## ARTICLE V
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

The following is a summary of the proposed distributions and treatment of all classified Allowed Claims and Equity Interests under the Plan.

**5.1    Treatment of Allowed Claims and Interests**

5.1.1    Prepetition Secured Lender Claim (Class 1).

(a)    Classification: Class 1 consists of the Prepetition Secured Lender Claim against the Debtor.

(b)    Treatment:  On or as soon as reasonably practicable after the Effective Date, the holder of the Allowed Prepetition Secured Lender Claim shall receive (i) 50% of the New Equity in the Reorganized Debtor in full and complete discharge of, and in exchange for $2,000,000 of the Prepetition Secured Lender Claim, and (ii) the remainder of the Prepetition Secured Lender Claim shall be treated as a continuing obligation of the Reorganized Debtor upon the terms set forth in the Plan Supplement, and shall not be deemed extinguished, discharged, cancelled, released or otherwise satisfied under the Plan; provided that the GlassBridge Guaranty and the GlassBridge Pledge shall be terminated, and GlassBridge shall be discharged and released of all obligations thereunder, as of the Effective Date.

(c)    Impairment and Voting: The Allowed Prepetition Secured Lender Claim is impaired, and the holder of such Claim is entitled to vote to accept or reject the Plan on account of such Claim pursuant to section 1126(a) of the Bankruptcy Code.

5.1.2    Other Secured Claims (Class 2).

(a)    Classification: Class 2 consists of all Allowed Other Secured Claims, if any, against the Debtor.

7

(b)     <u>Treatment</u>: Each holder of an Allowed Other Secured Claim against the Debtor shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete discharge of, and in exchange for, such Allowed Other Secured Claims, at the option of the Plan Sponsor: (i) payment in full in Cash; (ii) the collateral securing its Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Other Secured Claim; or (iv) such other treatment rendering such Allowed Other Secured Claim unimpaired.

(c)     <u>Impairment and Voting</u>: Allowed Other Secured Claims are unimpaired, and the holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.1.3    Other Priority Claims (Class 3).

(a)     <u>Classification</u>: Class 3 consists of all Other Priority Claims against the Debtor.

(b)     <u>Treatment</u>: Each holder of an Allowed Other Priority Claim against the Debtor shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete discharge of, and in exchange for, such Allowed Other Priority Claim, (i) Cash equal to the amount of such Allowed Other Priority Claim on the Effective Date; or (ii) such other treatment to the holder of an Allowed Other Priority Claim as to which the Debtor, the Plan Sponsor and the holder of such Allowed Other Priority Claim shall have agreed upon in writing.

(c)     <u>Impairment and Voting</u>: Allowed Other Priority Claims are unimpaired, and the holders of such Claims are not entitled to vote to accept or reject the Plan on account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.1.4    General Unsecured Claims (Class 4).

(a)     <u>Classification</u>: Class 4 consists of all General Unsecured Claims against the Debtor.

(b)     <u>Treatment</u>: On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, (i) payment in full in Cash, plus any interest necessary to cause such Allowed General Unsecured Claim to be unimpaired; or (ii) such other treatment to the holder of an Allowed General Unsecured Claim as to which the Debtor, the Plan Sponsor and the holder of such Allowed General Unsecured Claim shall have agreed upon in writing.

(c)     <u>Impairment and Voting</u>: Allowed General Unsecured Claims are unimpaired, and the holders of such Claims are not entitled to vote to accept or reject the Plan on

20602235.4
237312-10001

account of such Claims and will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

     5.1.5   Preferred Equity Interests (Class 5).

     (a)    <u>Classification</u>: Class 5 consists of all Preferred Equity Interests in the Debtor.

     (b)    <u>Treatment</u>: On or as soon as reasonably practicable after the Effective Date, the Preferred Equity Interest Holder, on account of and in full and complete settlement, release and discharge of, and in exchange for, its Allowed Preferred Equity Interest shall receive 50% of the New Equity in the Reorganized Debtor.  On the Effective Date, all Preferred Equity Interests shall be deemed automatically cancelled, released, and extinguished without further action by the Debtor or the Reorganized Debtor, and any and all obligations of the Debtor and the Reorganized Debtor thereunder shall be discharged. For the avoidance of doubt, the Allowed Preferred Equity Interest Holder shall not receive any portion of Remaining Cash.

     (c)    <u>Impairment and Voting</u>: Allowed Preferred Equity Interests are impaired, and the Allowed Preferred Equity Interest Holder is entitled to vote to accept or reject the Plan on account of such Interests pursuant to section 1126(a) of the Bankruptcy Code.

     5.1.6   Other Equity Interests (Class 6).

     (a)    <u>Classification</u>: Class 6 consists of all Other Equity Interests in the Debtor.

     (b)    <u>Treatment</u>: On or as soon as reasonably practicable after the Effective Date, the holder of Allowed Other Equity Interests will receive on account of its Other Equity Interests (i) all Remaining Cash and (ii) the IP Grant.  On the Effective Date, all Other Equity Interests shall be deemed automatically cancelled, released, and extinguished without further action by the Debtor or the Reorganized Debtor, and any and all obligations of the Debtor and the Reorganized Debtor thereunder shall be discharged.

     (c)    <u>Impairment and Voting</u>: Allowed Other Equity Interests are impaired, and the holders of such Interests are entitled to vote to accept or reject the Plan on account of such Claim pursuant to section 1126(a) of the Bankruptcy Code.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1    Continued Corporate Existence**

    Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to its Charter

20602235.4
237312-10001

Documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan.

Upon the Effective Date, and without any further action by the shareholders, directors, or officers of the Reorganized Debtor, the Reorganized Debtor's Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval other than any requisite filings required under applicable state, provincial, or federal law. The Charter Documents shall be filed with the Plan Supplement.

### 6.2    Management, Board of Directors, and Discharge of Board of Directors

The Plan Sponsor may nominate and elect new members for the board of directors of the Reorganized Debtor in accordance with the Reorganized Debtor's Charter Documents. The identity of such new members shall be disclosed in the Plan Supplement prior to the Plan Supplement Deadline. Upon the Effective Date, the current members of the Debtor's board of directors shall no longer serve in such capacity and shall be discharged of all duties in connection therewith.

### 6.3    Arrangements with the Distribution Trustee

By the Plan Supplement Deadline, the Debtor shall file with the Bankruptcy Court a disclosure identifying the Distribution Trustee under the Distribution Trust. At the Confirmation Hearing, the Bankruptcy Court shall ratify such appointment of the Distribution Trustee. All compensation for the Distribution Trustee shall be paid from the Distribution Trust Assets in accordance with the Distribution Trust Agreement. The approved Distribution Trustee shall commence its service as Distribution Trustee effective upon the execution of the Distribution Trust Agreement at the Closing.

### 6.4    The Closing

20602235.4
237312-10001

The Closing of the transactions required and contemplated under the Plan shall take place on the Effective Date at the offices of Goulston & Storrs, P.C., 885 Third Avenue, 18th Floor, New York, New York 10022, or at such other place identified in a notice provided to those parties listed in Section 13.12 of the Plan. The Debtor and Plan Sponsor may reschedule the Closing by making an announcement at the originally scheduled Closing of the new date for the Closing. A notice of the rescheduled Closing shall be filed with the Bankruptcy Court and served on the parties identified in Section 13.12 of the Plan within two (2) days after the originally scheduled Closing. All documents to be executed and delivered by any party as provided in this Article VI and all actions to be taken by any party to implement the Plan as provided herein shall be in form and substance satisfactory to the Debtor and Plan Sponsor. The following actions shall occur at or before the Closing (unless otherwise specified), and shall be effective on the Effective Date:

(a)    Execution of Documents and Corporate Action. The Debtor shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan. The Debtor, or its designee, is authorized (i) to execute on behalf of the Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of the Debtor to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor. On the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and all corporate actions required by the Debtor and the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Reorganized Debtor. For purposes of effectuating the Plan, none of the transactions contemplated in the Plan shall constitute a change of control under any agreement, contract, or document of the Debtor.

(c)    Release of Liens. Upon request by the Debtor, the Reorganized Debtor, or the Plan Sponsor, any Person holding a Lien in any of the Debtor's property shall execute any lien release or similar document(s) required to implement the Plan or reasonably requested by the Debtor, the Reorganized Debtor, or the Plan Sponsor in a prompt and diligent manner. Notwithstanding the foregoing, the Debtor, the Reorganized Debtor, or the Plan Sponsor is authorized to execute any lien release or similar document(s) required to implement the Plan.

(d)    Mutual Releases. On the Effective Date, the ESW Parties shall execute a release of the GlassBridge Guaranty and the GlassBridge Pledge executed by GlassBridge as well as all other claims against GlassBridge and its affiliates relating to the Debtor. Contemporaneously, GlassBridge shall execute a waiver and release of all claims or interests it has or may have against the ESW Parties, including any profit interests, in connection with all non-debtor subsidiaries of the Debtor. For the avoidance of doubt, the foregoing releases will not affect either GlassBridge's or the ESW Parties' respective rights to enforce any obligations created by the Plan, Plan Supplement or related documents.

20602235.4
237312-10001

(e)      Cancellation of Equity Interests. On the Effective Date, all existing Equity Interests in the Debtor shall be retired, cancelled, extinguished, and/or discharged in accordance with the terms of the Plan. Except as otherwise provided in the Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Equity Interest shall be cancelled as to the Debtor and the Reorganized Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be released and discharged.

(f)      Issuance of New Equity. On the Effective Date, (i) 500 shares of New Equity of the Reorganized Debtor shall be issued to the Preferred Equity Interest Holder and (ii) 500 shares of New Equity shall be issued to the Prepetition Secured Lender in partial consideration for the Allowed Prepetition Secured Lender Claim. The 1,000 shares of New Equity represent 100% of the equity in the Reorganized Debtor. The New Equity shall be free and clear of all Liens, Claims, Interests, and encumbrances of any kind, except as otherwise provided in the Plan. All the shares of the New Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assignable. On the Effective Date, none of the New Equity will be listed on a national securities exchange. The Reorganized Debtor may take all necessary actions, if applicable, after the Effective Date to suspend any requirement to (i) be a reporting company under the Securities Exchange Act, and (ii) file reports with the Securities and Exchange Commission or any other entity or party.

(e)      Funding of the Consideration. The Plan Sponsor will pay the Consideration to the Distribution Trust on the Effective Date.

(f)      Execution and Ratification of the Distribution Trust Agreement. On the Effective Date, the Distribution Trust Agreement shall be executed by all parties thereto. The Distribution Trust Agreement shall be provided in the Plan Supplement. Each holder of a Claim shall be deemed to have ratified and become bound by the terms and conditions of the Distribution Trust Agreement.

(g)      Transfer of Distribution Trust Assets. All property of the Debtor constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtor and/or the Plan Sponsor to the Distribution Trust, free and clear of all Liens, Claims, Equity Interests, and encumbrances.  Except as expressly set forth in the Plan, all payments contemplated under the Plan and Allowed Claims and Allowed Equity Interests shall be paid from the Distribution Trust Assets.

20602235.4
237312-10001

### 6.5    Tax Treatment of the Distribution Trust

The Distribution Trust established under the Plan is established for the purpose of distributions to holders of all Claims by liquidating the Distribution Trust Assets transferred to the Distribution Trust and performing related and incidental functions referenced in the Distribution Trust Agreement, and the Distribution Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust. The purpose of the Distribution Trust is to provide a mechanism for the liquidation of the Distribution Trust Assets, and to distribute the Consideration and the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Distribution Trust, to the Beneficiaries in accordance with the terms of the Plan. No business activities will be conducted by the Distribution Trust other than those associated with or related to the liquidation of the Distribution Trust Assets.  It is intended that the Distribution Trust will have a termination date no more than five years from its formation (subject to possible extensions approved in advance) and make distributions from the proceeds from asset dispositions and investments (less amounts needed to cover trust expenses) at least annually.  It is further intended that the Distribution Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and Beneficiaries shall treat the transfers in trust described in the Plan as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). Assuming the Distribution Trust is treated as a "liquidating trust", all the parties and Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Distribution Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Distribution Trust in exchange for interests in the Distribution Trust.  The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Distribution Trust and the owners of the Distribution Trust. The Distribution Trustee shall file returns for the Distribution Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the Beneficiaries and the Distribution Trustee, shall value the Distribution Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Subsequent dispositions of Distribution Trust Assets and certain expense reserves may be taxable to Beneficiaries.  Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a Beneficial Interest in or receiving a Distribution from the Distribution Trust.

### 6.6    Preservation of Rights of Action

Unless any Rights of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Rights of Action, and the Reorganized Debtor's rights to commence, prosecute, or settle such Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date. Such Rights of Action include any and all causes of action the Debtor has or may have whether known or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor as of the Effective Date or facts or circumstances that may

13

change or be different from those that the Debtor believes to exist. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Rights of Action upon or after the Effective Date based on the Disclosure Statement, the Plan, the Plan Supplement, or the Confirmation Order, except where such causes of action have been released in the Plan. For the avoidance of doubt, and notwithstanding Section 7.1 of the Plan, the Reorganized Debtor shall retain and shall have the exclusive right to enforce any and all of the Debtor's Rights of Action including, without limitation, those arising from or related to (a) Intellectual Property and (b) claims and causes of action under chapter 5 of the Bankruptcy Code (including, without limitation, claims for accounts receivable and claims for turnover of Cash of the Debtor being held in escrow or on deposit by third parties), and shall be the sole beneficiary of any recoveries from any actions in connection therewith.  Notwithstanding the foregoing, all claims for the avoidance of any transfers or obligations under sections 544, 547 and 548 of the Bankruptcy Code or any state law analogs, against any Released Parties, shall be waived as of the Effective Date, and the Reorganized Debtor shall not have standing to commence any such claims or causes of action after the Effective Date.

### 6.7   Insurance

Nothing in the Disclosure Statement, the Plan, or the Confirmation Order, including the discharge, waiver, release, satisfaction or other treatment of any Claim hereunder, shall (i) alter the rights and obligations of the Debtor or the Debtor's insurers (and third party claims administrators) under applicable insurance policies (and the agreements related thereto) or any claims asserted against such insurers or under any such insurance policies, (ii) modify or reduce the coverage provided thereunder or the terms and conditions thereof (iii) diminish or impair the enforceability of any insurance policies, or any claims thereunder, covering current and former officers and/or directors of the Debtor. Any such rights and obligations shall be determined under the applicable insurance policies, any related agreement of the parties, and applicable law.

## ARTICLE VII
## PROVISIONS GOVERNING RESOLUTION OF CLAIMS
## AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 7.1   Right to Object to Claims

Notwithstanding anything to the contrary herein, subject to the terms and conditions set forth in the Distribution Trust Agreement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Distribution Trustee shall have the authority, but not the obligation, to: (1) file, withdraw, or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. The Distribution Trustee shall succeed to any pending objections to Claims filed by the Debtor prior to the Effective Date, and the Distribution Trustee shall have and retain any and all rights and defenses the Debtor had immediately prior to the

Effective Date with respect to any Disputed Claim. The Reorganized Debtor shall provide commercially reasonable assistance and cooperation to the Distribution Trustee, at the Distribution Trustee's cost, in connection with the Distribution Trustee's prosecution of objections to Claims, including, without limitation, reasonable access to the books and records of the Debtor or the Reorganized Debtor (as the case may be) and other information reasonably requested by the Distribution Trustee to enable the Distribution Trustee to perform its obligations under the Distribution Trust Agreement; provided that the Distribution Trustee will keep all such information confidential and will not disclose any information provided by the Reorganized Debtor without express written consent of the Reorganized Debtor, except as necessary in connection with the objection to any Claim, in which case the Distribution Trust shall first seek and obtain a Court order upon not less than five (5) business days' notice to the Reorganized Debtor. Further, notwithstanding anything to the contrary, no provision by the Reorganized Debtor of any privileged information to the Distribution Trustee shall result in the waiver of any privilege held by the Reorganized Debtor. The Distribution Trustee will cooperate fully with the Reorganized Debtor in preserving privilege and confidentiality of any information provided by the Reorganized Debtor to the Distribution Trustee. Notwithstanding the foregoing, nothing herein shall impose upon or require the Reorganized Debtor to preserve or maintain the Debtor's books and records for any purpose beyond twelve months following the Effective Date unless the Distribution Trustee notifies the Reorganized Debtor before that time that the Distribution Trustee has further need to have access to such books and records.

### 7.2    Deadline for Objecting to Claims

Objections to Claims must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the expiration of the Claim Objection Deadline (unless such period is further extended by subsequent orders of the Bankruptcy Court); otherwise such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code. The objection shall notify the Creditor of the deadline for responding to such objection.

### 7.3    Right to Request Estimation of Claims

Pursuant to section 502(c) of the Bankruptcy Code, each of the Debtor, the Reorganized Debtor, and the Distribution Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

### 7.4    Distribution Procedures Regarding Allowed Claims and Equity Interests

(a)    In General

The Distribution Trustee shall make all Distributions required to be made under the Plan, including Distributions from the Distribution Trust.

(b)      Distributions on Allowed Claims and Equity Interests Only

Distributions shall be made only to the holders of Allowed Claims and Allowed Equity Interests. Unless and until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim shall not receive a Distribution.

(c)      Place and Manner of Payments of Distributions

Except as otherwise specified in the Plan, Distributions shall be made by mailing such Distribution to the Creditor or Interest Holder at the address listed in any proof of claim filed by the Creditor or at such other address as such Creditor or Interest Holder shall have specified for payment purposes in a written notice received by the Distribution Trustee at least twenty (20) days before a Distribution Date. If a Creditor or Interest Holder has not filed a proof of claim or sent the Distribution Trustee a written notice of payment address, then the Distribution(s) for such Creditor or Interest Holder will be mailed to the address identified in the Schedules of Assets and Liabilities. The Distribution Trustee shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances. Before receiving any Distributions, all Creditors and Interest Holders, at the request of the Distribution Trustee, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Distribution Trustee; otherwise, the Distribution Trustee may suspend Distributions to any Creditors or Interests Holders who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

(d)      Undeliverable Distributions

If a Distribution made to any Creditor or Interest Holder is returned as undeliverable, the Distribution Trustee shall use reasonable efforts to determine the then current address for such Creditor or Interest Holder. If the Distribution Trustee cannot determine, or is not notified of, a then current address for such Creditor or Interest Holder within six months after the Effective Date, the Distribution reserved for such Creditor or Interest Holder shall be deemed an unclaimed Distribution, and Section 7.4(e) of the Plan shall be applicable thereto.

(e)      Unclaimed Distributions

If the current address for a Creditor or Interest Holder entitled to a Distribution under the Plan has not been determined or such Creditor or Interest Holder has otherwise not been located within six months after the Effective Date or a Creditor or Interest Holder has not submitted a valid Federal Tax Identification Number or Social Security Number to the Distribution Trustee within three months after the Distribution Trustee made a request therefor or any distribution issued by the Distribution Trustee has not been successfully deposited or cashed within 90 days from the mailing of any Distribution check or issuance of any Distribution wire or ACH, then in each case such Creditor or Interest Holder shall forfeit the Distribution on the Claim or Interest and any amounts to which the Creditor or Interest Holder would have otherwise been entitled shall become available to pay other Allowed Claims and Interests.

(f)      Withholding

16

The Distribution Trustee may, but shall not be required to, at any time withhold from a Distribution to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Distribution Trustee (in its sole discretion) to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Distribution Trustee, in the exercise of its sole discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

    (g)    Dissolution

        (i)    The Distribution Trustee shall be discharged and Distribution Trust shall be dissolved at such time as all of the Distribution Trust Assets have been distributed pursuant to the Plan and the Distribution Trust Agreement; *provided, however*, that in no event shall the Distribution Trust be dissolved later than three (3) years from the creation of the Distribution Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension is necessary to facilitate or complete the liquidation of the Distribution Trust Assets. Such extensions in the aggregate shall not exceed three (3) years without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Distribution Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes.

        (ii)    If at any time the Distribution Trustee determines, in reliance upon such professionals as a Distribution Trustee may retain, that the expense of administering the Distribution Trust so as to make a final distribution to Distribution Trust Beneficiaries is likely to exceed the value of the assets remaining in the Distribution Trust, the Distribution Trustee may (i) reserve any amount necessary to dissolve the Distribution Trust; (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtor, the Distribution Trustee, or any insider of the Distribution Trustee; and (iii) dissolve the Distribution Trust.

**7.5     Procedures Regarding Distributions from the Distribution Trust**

Procedures regarding Distributions from the Distribution Trust shall be governed by the Distribution Trust Agreement.

## ARTICLE VIII
## EXECUTORY CONTRACTS

**8.1     Assumption of Executory Contracts**

On the Effective Date, and subject to Section 8.3 hereof, all Executory Contracts identified on the Schedule of Assumed Contracts and Unexpired Leases, attached hereto as Exhibit B, shall be deemed assumed by the Reorganized Debtor. The Plan Sponsor may amend the Schedule of Assumed Contracts and Unexpired Leases at any time prior to the Effective Date. Entry of the Confirmation Order shall constitute approval of the assumption of such Executory Contracts under sections 365 and 1123 of the Bankruptcy Code.

**8.2     Rejection of Executory Contracts**

All Executory Contracts not identified on the Schedule of Assumed Contracts and Unexpired Leases (or assumed by the Debtor previously) shall be deemed rejected on the Effective Date. Entry of the Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code. The rejection of any executory contract or unexpired lease, or any part thereof, pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such executory contract or unexpired lease by any counterparty thereto. Notwithstanding any applicable non-bankruptcy law to the contrary, the Debtor and the Distribution Trustee, as applicable, expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnifications, and/or contributions under or in connection with such executory contract or unexpired lease. Notwithstanding the rejection of an Executory Contract, the terms of any confidentiality agreement or covenant not to compete contained therein shall survive and remain in full force and effect for the term thereof.

The Debtor will reject, on or before the Effective Date, and the Reorganized Debtor will not assume, any employment, severance, bonus, incentive, commission, compensation, or similar agreement or plan, 401k plan or any agreement outside the ordinary course of business, with any employees, officers, or directors. Any employee handbook shall, immediately upon the Effective Date, be terminated without any action of the Debtor, the Reorganized Debtor, or the Plan Sponsor and shall be deemed rejected as of the Effective Date.

On the Effective Date, any and all equity-based incentive plans or stock ownership plans of the Debtor, including all agreements related thereto, entered into before the Effective Date, or other plans, agreements, or documents giving rise to Equity Interests, including the contingent cash components of any such plans, agreements, or documents, shall be immediately terminated without any action of the Debtor, the Reorganized Debtor, or the Plan Sponsor. Such plans, agreements, or documents shall be deemed to be, and shall be treated as though they are,

18

Executory Contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan. From and after the Effective Date, all warrants, stock options, and other equity awards outstanding or issued at such time, whether included in a warrant, plan, contract, agreement, or otherwise, will have no value, shall be cancelled and extinguished and thus will not entitle any holder thereof to purchase or otherwise acquire any equity interests in the Reorganized Debtor.

### 8.3    Procedures Related to Assumption of Executory Contracts

**(a)    Establishment of Cure Claim Amounts**

The Cure Amounts associated with the assumption of the Executory Contracts pursuant to Section 8.1 hereof are specified in the Schedule of Assumed Contracts and Unexpired Leases. The Debtor shall serve counterparties to the Executory Contracts with a Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto (the "Cure Notice") no later than the Plan Supplement Deadline. The Debtor and the Plan Sponsor reserve the right to amend or supplement the Cure Notice.

Any Objection to a Cure Notice including (i) an objection to the applicable Cure Amount (a "Cure Objection") and (ii) an objection to the adequate assurance of future performance (an "Adequate Assurance Objection") to be provided by the Plan Sponsor on behalf of the Reorganized Debtor must be in writing, filed with the Bankruptcy Court, and served upon (a) the Debtor, (b) counsel to the Debtor, (c) counsel to the Plan Sponsor, and (d) the U.S. Trustee, by the deadline established by the Bankruptcy Court for filing objections to the Plan (the "Objection Deadline"). The objection must set forth the specific default alleged under the applicable Executory Contract and claim a specific monetary amount that differs from the applicable Cure Amount, if any, and/or further information required of the Reorganized Debtor with respect to adequate assurance of future performance.

If no Objection to the Cure Amount for an Executory Contract is received by the Objection Deadline, then the assumption of such Executory Contract shall be authorized pursuant to sections 365 and 1123 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the non-Debtor counterparty to such Executory Contract for all purposes and shall constitute a final determination of the Cure Amount required to be paid to such Executory Contract counterparty, and such Executory Contract counterparty shall be deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption of such Executory Contract (including, without limitation, from asserting any additional cure or other amounts with respect to the Executory Contract arising prior to such assumption). Furthermore, upon the assumption of such Executory Contract, the Reorganized Debtor shall enjoy all of the Debtor's rights and benefits thereunder without the necessity of obtaining any party's written consent to the Debtor's assumption of such rights and benefits.

**(b)    Objection to Disputed Cure Amounts**

The Plan Sponsor shall have the right to examine any Cure Objection filed by any party, and shall have the right to object to and contest the Disputed Cure Amount asserted therein.

20602235.4
237312-10001

If an objection to a Disputed Cure Amount has not been resolved by the Bankruptcy Court or agreement of the parties by the Effective Date, the Executory Contract related to such Disputed Cure Amount shall be deemed assumed by the Reorganized Debtor effective on the Effective Date; *provided, however*, the Reorganized Debtor may revoke an assumption of any such Executory Contract within ten (10) days after entry of an order by the Bankruptcy Court adjudicating the objection to the Disputed Cure Amount related to the Executory Contract by filing a notice of such revocation with the Bankruptcy Court and serving a copy on the party/ies whose Executory Contract is rejected. Any Executory Contract identified in a revocation notice shall be deemed rejected retroactively to the Effective Date.

(c)     **Payment of Cure Amounts**

Within ten (10) Business Days after the Effective Date, the Distribution Trustee shall pay from the Consideration all Cure Amounts related to Executory Contracts listed on the Cure Notice, other than Disputed Cure Amounts.

Subject to Section 8.3(b) hereof, the Distribution Trustee shall pay all Cure Amounts that are subject to an objection on the later of (i) within ten (10) Business Days after the Effective Date or (ii) within ten (10) Business Days after entry of an order by the Bankruptcy Court resolving the objection or approving an agreement between the parties concerning the Cure Amount, unless the Plan Sponsor has filed a notice of revocation with respect to any Executory Contract in accordance with Section 8(b).

(d)     **No Admission of Liability**

Neither the inclusion nor exclusion of any Executory Contract by the Debtor and the Plan Sponsor on the Cure Notice, nor anything contained in the Plan, shall constitute an admission by the Debtor or the Plan Sponsor that any such contract or unexpired lease is in fact an Executory Contract or that the Debtor has any liability thereunder.

(e)     **Reservation of Rights**

Nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, causes of action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of the Plan increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any such contract or lease.

**8.4     Rejection Claim Bar Date**

Each Claim resulting from the rejection of an Executory Contract, pursuant to Section 8.2 hereof or pursuant to a revocation notice pursuant to Section 8.3(b) hereof, shall be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date. Any Claim resulting from the rejection of an Executory Contract not filed by the applicable deadline shall be discharged and forever barred, and shall not be entitled to any Distributions under the Plan. The Distribution Trustee shall have the right to object to any rejection damage Claim.

20602235.4
237312-10001

**8.5     Indemnification Obligations**

Subject to Section 6.7 of the Plan, any obligation or agreement of the Debtor to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtor, relating to any acts or omissions occurring before the Effective Date, whether arising pursuant to charter, bylaws, contract, or applicable state law, shall be deemed to be, and shall be treated as, a General Unsecured Claim and/or Executory Contract and shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date; provided, however, that such obligations shall constitute a nominal obligation of the Debtor or the Distribution Trust, as applicable, to the extent necessary to ensure the continued effectiveness of any insurance coverage relating to such claims, and any and all other Claims resulting from the agreements or obligations contemplated by this Section 8.5 shall be disallowed under section 502(e) of the Bankruptcy Code or other applicable grounds, including section 502(d), or if any court of applicable jurisdiction rules to the contrary, such Claim shall be estimated pursuant to section 502(c) of the Bankruptcy Code in the amount of $0.  Notwithstanding the foregoing, in accordance with Section 6.7 of the Plan, nothing contained in this Section 8.5 shall serve to eliminate, restrict, impair or otherwise reduce any directors and officers or other insurance coverage that would have been available to the Debtor and its directors and officers had such obligations not been rejected, canceled and discharged.

## ARTICLE IX
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

**9.1     Impaired Classes Entitled to Vote**

Each impaired Class shall be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Debtor's Schedules of Assets and Liabilities.

**9.2     Acceptance by Class**

A Class of Claims or Equity Interests shall have accepted the Plan if the Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims or Allowed Equity Interests of such Class that have voted to accept or reject the Plan.

**9.3     Reservation of Cramdown Rights**

In the event that any impaired Class shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor and Plan Sponsor reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

20602235.4
237312-10001

## ARTICLE X
## EFFECT OF CONFIRMATION

### 10.1    Legally Binding Effect

The provisions of the Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan and wherever located.

### 10.2    Vesting of Property of Debtor in Reorganized Debtor

On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Estate Property, other than the Distribution Trust Assets, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, Equity Interests, and encumbrances of any kind, except as otherwise provided in the Plan. Moreover, pursuant to section 1141(d) of the Bankruptcy Code, the effect of confirmation of the Plan shall be to discharge the Debtor from any debt that arose before the Effective Date, and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

Neither the Reorganized Debtor, the ESW Parties nor any of its or their respective subsidiaries or affiliates shall (a) have any liability or responsibility for any Claim against or Equity Interest in the Debtor, the Debtor's Estate, or any affiliate or Insider of the Debtor, or (b) have any liability or responsibility to the Debtor, each except as expressly set forth in the Plan. Without limiting the effect or scope of the foregoing, and to the fullest extent permitted by applicable laws, the issuance of the New Equity or transfer of assets contemplated in the Plan shall not subject the Reorganized Debtor, the ESW Parties or any of its or their respective properties or assets or subsidiaries, affiliates, successors, or assigns to any liability for Claims against the Debtor's interests in such assets by reason of such issuance of New Equity or transfer of assets under any applicable laws, including, without limitation, any successor liability.

On the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of any and all Estate Property, without supervision of or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE XI
## INJUNCTIONS, RELEASES, AND DISCHARGE

### 11.1    Discharge of the Debtor

**To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all Distributions under the Plan will be in exchange for, and in full and complete satisfaction, settlement, discharge and release of, all Claims and causes of action, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtor or any of its assets or properties, and regardless of**

22

whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of the discharge of all Claims against, and Equity Interests in, the Debtor, subject to the occurrence of the Effective Date.

**11.2    Discharge Injunction**

Except as otherwise expressly provided in the Plan, the discharge and releases set forth in Section 11.1 hereof shall also operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim discharged and released in Section 11.1 hereof, or (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim discharged and released in Section 11.1 hereof; *provided*, *however*, that such injunction shall only operate for the benefit of the Debtor and the Reorganized Debtor, their successors and assigns, and their assets, properties, and interests in property. Except as otherwise expressly provided in the Plan, all Persons shall be precluded and forever barred from asserting against the Debtor and the Reorganized Debtor, their successors or assigns, or their assets, properties, or interests in property, any other or further Claims, or any other right to legal or equitable relief, regardless of whether such right can be reduced to a right to payment, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

**11.3    Exculpation and Limitation of Liability**

The Exculpated Parties will neither have nor incur any liability to any entity for any claims or causes of action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, soliciting votes on, administering, confirming, or effecting the consummation of the RSA, Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the entry into the RSA, the prosecution of the Debtor's chapter 11 case, the approval of the Disclosure Statement, or confirmation or consummation of the Plan, the distribution of property under the Plan or any other related agreement; *provided, however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; *provided further* that the Exculpated

23

Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan and shall retain any defense available under applicable law regarding its entitlement to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

### 11.4    Releases by the Debtor

**Notwithstanding anything to the contrary in the Plan or the Confirmation Order, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, the Debtor will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor) and their respective properties from any and all claims that the Debtor would have been legally entitled to assert in its own right, on its own behalf, or on behalf of another party, including claims that could have been asserted derivatively on behalf of the Debtor, against the Released Parties arising through the Effective Date (including all claims based on or arising out of facts or circumstances that existed as of or prior to the Effective Date); *provided, however*, that the foregoing provisions of this release shall not operate to waive or release (i) the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to final order of the Bankruptcy Court; and/or (ii) any defenses against a third party.**

**The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release.**

### 11.5    Releases by Third Parties

**To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, or claims in respect of equitable subordination, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of facts or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, its Estate, or the Reorganized Debtor would have**

**been legally entitled by applicable law to assert in its own right, whether individually or collectively) which Creditors or other Persons receiving or who are entitled to receive Distributions under the Plan may have against any of the Released Parties in any way related to the Chapter 11 Case or the Debtor (or its predecessors);** *provided, however*, **that the foregoing release of the Released Parties (other than the Debtor) is granted only by (a) Creditors and Interest Holders who are unimpaired and (b) the Releasing Parties;** *provided, further, however*, **that the release provided in this Section 11.5 shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or** *ultra vires* **acts under applicable law.**

**For the avoidance of doubt, nothing in this Article XI shall prevent the enforcement of the terms of the Plan.**

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.1   Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)   To allow, disallow, determine, liquidate, classify, or establish the priority or secured or unsecured status of or estimate any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

(b)   To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)   To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption, or assumption and assignment of any Executory Contract;

(d)   To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)   To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

25

(f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor, the Estate, the Reorganized Debtor, or the Distribution Trustee;

(g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor or the Estate that may be pending on the Effective Date or that may be brought by the Debtor, the Reorganized Debtor, or the Distribution Trustee (as applicable), or any other related proceedings by the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing;

(h)      To decide or resolve any and all applications for compensation;

(i)      To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)      To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

(k)      To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case; and

(l)      To enter an order closing the Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

**12.2    Limitation on Jurisdiction**

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents. For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(a)      Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and any and all related proceedings and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c), including, without limitation, (i) all proceedings concerning disputes with, or Rights of Action or Claims against, any Person that the Debtor, the Estate, the Distribution Trust, or the Reorganized Debtor or any of their successors or assigns, may have, and (ii) any and all Rights of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including any infringement of Intellectual Property or conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtor to any other Person;

(b)      Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtor with Bankruptcy Court approval) from any Person wrongly asserting

26

ownership, possession, or control of the same, whether pursuant to sections 542, 543, 549, 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtor or the Estate under or related to the Bankruptcy Code; and

(c)      Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.1    Conditions to Confirmation

The Confirmation Order will not be effective unless (a) the Confirmation Order shall be in form and substance acceptable to the Debtor and the Plan Sponsor, each in its reasonable discretion, and acceptable to the Prepetition Secured Lender in its reasonable discretion; (b) the final version of the Plan, Plan Supplement, and any other documents, or schedules thereto, shall have been filed in form and substance acceptable to the Debtor and the Plan Sponsor, each in its reasonable discretion, and acceptable to the Prepetition Secured Lender in its reasonable discretion; (c) no breach or failure to comply with the terms of the Cash Collateral/DIP Order, the RSA, the Plan, or any other material order of the Bankruptcy Court shall have occurred and be continuing; (d) the Debtor has not caused or permitted to occur the sale, disposal or other transfer of the Debtor's material assets, including without limitation any of its interests or rights in any intellectual property or software assets (including, without limitation, any proprietary quantitative trading software or software code or any other component thereof) or take any action in support of, or to cause, any of the foregoing, in each case without the express written consent of the ESW Parties in their sole discretion; and (e) the Confirmation Order shall provide for (i) the Preferred Equity Interest Holder  and the Prepetition Secured Lender to acquire the New Equity, free and clear of all Liens, Claims, Equity Interests, and encumbrances of any kind, except as otherwise provided in the Plan and (ii) GlassBridge to acquire the IP Grant.

### 13.2    Conditions to Effectiveness

The Plan will not be effective unless (a) the conditions to confirmation in Sections 13.1(a) and (b) have been either satisfied or waived; (b) the Confirmation Order has become a Final Order; (c) no breach or failure to comply with the terms of the Cash Collateral/DIP Order, the RSA, the Plan, the Confirmation Order, or any other material order of the Bankruptcy Court shall have occurred and be continuing; (d) the Debtor has not caused or permitted to occur the sale, disposal or other transfer of the Debtor's material assets, including without limitation any of its interests or rights in any intellectual property or software assets (including, without limitation, any proprietary quantitative trading software or software code or any other component thereof) or take any action in support of, or to cause, any of the foregoing, in each case without the express written consent of the ESW Parties in their sole discretion; (e) the Preferred Equity Interest Holder  and the Prepetition Secured Lender shall acquire the New Equity, free and clear of all Liens, Claims, Equity Interests, and encumbrances of any kind, except as otherwise provided in the Plan; (f) GlassBridge shall acquire the IP Grant; and (g) the Debtor has not

caused, or as to Insiders, permitted to occur, from and after the Petition Date, (i) a Material Adverse Change with respect to the Debtor's Intellectual Property or (ii) an "ownership change" as such term is used in section 382 of title 26 of the United States Code. The conditions to effectiveness set forth in this subsection 13.2 may be waived with the consent of the Plan Sponsor.

### 13.3    Exemption from Taxes

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments, and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation, or perfection of any lien, pledge, other security interest, or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution, and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; and/or (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Estate's assets in the Reorganized Debtor or the Distribution Trust pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.4    Securities Exemption

Any rights issued under, pursuant to, or in effecting the Plan, including, without limitation, the New Equity in the Reorganized Debtor, and the offering and issuance thereof by any party, including without limitation the Plan proponent or the Estate, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code. If the issuance of the New Equity does not qualify for an exemption under section 1145 of the Bankruptcy Code, the New Equity shall be issued in a manner which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.

### 13.5    Defects, Omissions and Amendments of the Plan

The Debtor may, with the consent of the Plan Sponsor and the approval of the Bankruptcy Court and without notice to holders of Claims and Equity Interests, insofar as it does not materially and adversely affect holders of Claims and Equity Interests, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Debtor may, with the consent of the Plan Sponsor,

propose amendments or alterations to the Plan before the Confirmation Hearing as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims and Equity Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Debtor may, with the consent of the Plan Sponsor, propose amendments or alterations to the Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, do not materially and adversely affect holders of Claims and Equity Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of the Bankruptcy Code, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

### 13.6    Withdrawal of Plan

The Debtor reserves the right to withdraw the Plan, provided that the Plan Sponsor consents, at any time prior to the Confirmation Date. If the Debtor withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur by June 11, 2021, unless otherwise extended by mutual agreement of the Debtor and the Plan Sponsor, or the Effective Date does not occur by June 14, 2021, unless otherwise extended by mutual agreement of the Debtor and the Plan Sponsor, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver, or release of any claims by or against the Debtor or any other Person, or to prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any Person in any further proceedings involving the Debtor. Notwithstanding the foregoing, this Section 13.6 shall be subject in all respects to the RSA. In the event of an ESW Termination Event (as defined in the RSA), the Plan Sponsor shall not be required to continue to act as plan sponsor under the Plan.

### 13.7    Due Authorization By Holders of Claims and Equity Interests

Each and every holder of a Claim or Equity Interest who elects to participate in the Distributions provided for herein warrants that such holder is authorized to accept in consideration of its Claim against or Interest in the Debtor the Distributions provided for in the Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such holder under the Plan.

### 13.8    Filing of Additional Documentation

By the Plan Supplement Deadline, the Debtor may file with the Bankruptcy Court such Plan Supplement, agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or any Plan Document, which shall also constitute "Plan Documents."

### 13.9 Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

### 13.10 Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

### 13.11 Transfer of Claims and Equity Interests

Any transfer of a Claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section 13.11. Notice of any such transfer shall be forwarded to the Debtor by registered or certified mail, as set forth in Section 13.12 hereof. Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest in the Claim to be transferred. No transfer of a partial interest shall be allowed and all transfers must be of one hundred percent (100%) of the transferor's interest in the Claim; *provided, however*, that this provision shall not affect the validity of any Claim partially transferred prior to the Effective Date.

No transfer of Equity Interests shall be recognized by the Debtor after the Voting Record Date.

### 13.12 Notices

Any notice required to be given under the Plan or any Plan Document shall be in writing. Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Persons on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Persons on the Post-Confirmation Service List, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.

(a)     If to the Debtor, at:

Adara Enterprises Corp.
411 E 57th Street Suite 1-A
New York, New York 10022
Attention:  Mr. Daniel Strauss, President

20602235.4
237312-10001

Email:  dstrauss@adaraenterprisescorp.com

and

Adara Enterprises Corp.
c/o Loeb & Loeb LLP
345 Park Ave.
New York, NY 10154
Attention: Daniel Besikof
Email: dbesikof@loeb.com

(b)     If to the Plan Sponsor, at:

ESW Holdings, Inc.
401 Congress Ave., Suite 2650
Austin, Texas 78701
Attn: Andrew S. Price, Chief Financial Officer
Email: andy.price@trilogy.com

and

ESW Holdings, Inc.
c/o Goulston & Storrs, P.C.
885 Third Avenue, 18th Floor
New York, New York 10022
Attention: Trevor R. Hoffmann
Email: thoffmann@goulstonstorrs.com

(c)     If to the Prepetition Secured Lender, at:

ESW Holdings, Inc.
401 Congress Ave., Suite 2650
Austin, Texas 78701
Attn: Andrew S. Price
Email: andy.price@trilogy.com

and

ESW Holdings, Inc.
c/o Goulston & Storrs, P.C.
885 Third Avenue, 18th Floor
New York, New York 10022
Attention: Trevor R. Hoffmann
Email: thoffmann@goulstonstorrs.com

20602235.4
237312-10001

(d)      If to the U.S. Trustee, at:
       844 King Street
       Suite 2207
       Lockbox 35
       Wilmington, Delaware 19801
       Attention: Joseph McMahon
       Email: joseph.mcmahon@usdoj.gov

### 13.13   Implementation

The Debtor, the Reorganized Debtor, the Plan Sponsor, and the Distribution Trustee shall be authorized to perform all reasonable, necessary, and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents, without further order from the Bankruptcy Court.

### 13.14   No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor or the Estate with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

## ARTICLE XIV
## SUBSTANTIAL CONSUMMATION

### 14.1   Substantial Consummation

The Plan shall be deemed substantially consummated on the Effective Date.

### 14.2   Final Decree

On full consummation and performance of the Plan and Plan Documents, the Distribution Trustee may request the Bankruptcy Court to enter a final decree closing the Chapter 11 Case and such other orders that may be necessary and appropriate.

Dated: April 21, 2021

                             Daniel Strauss
                             President
                             Adara Enterprises Corp.

**EXHIBIT A**
**Glossary of Defined Terms**

"Administrative Claim" means any cost or expense of administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's Estate, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines, and penalties, any actual and necessary post-petition expenses of operating the business of the Debtor, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing of services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28 of the United States Code. Professional Compensation Claims shall only be Allowed for duly employed Professionals in the Chapter 11 Case in accordance with applicable law. For the avoidance of doubt, the Restructuring Expenses shall be deemed to be Administrative Claims for all purposes hereunder.

"Administrative Claim Bar Date" means the first Business Day that is thirty (30) days after the Effective Date.

"Administrative Tax Claim" means an Administrative Claim of a Governmental Unit.

"Allowance Date" means the date that a Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest.

"Allowed" means, (1) with respect to any Claim, a Claim allowable under 11 U.S.C. § 502, (a) for which a proof of claim was filed on or before, as applicable, the General Bar Date, the Governmental Unit Bar Date, the Administrative Claim Bar Date, or the Rejection Claim Bar Date, and as to which no objection or other challenge to the allowance thereof has been Filed by the Claim Objection Deadline, or if an objection or challenge has been timely Filed by such deadline, as is allowed by a Final Order; or (b) for which a proof of claim is not filed but that has been listed in the Schedules of Assets and Liabilities and is not listed as disputed, contingent, or unliquidated; or (c) that is deemed allowed by the terms of the Plan or a Final Order; or (2) with respect to any Equity Interest, an Equity Interest reflected as outstanding in the stock transfer ledger or similar register or record of the Debtor on the Petition Date. For purposes of determining the amount of an Allowed Claim (other than a Claim specifically Allowed under the Plan), there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the Creditor under 11 U.S.C. § 553. Notwithstanding anything to the contrary in the Plan, the Debtor or the Distribution Trustee may, in its discretion, treat a Claim as an Allowed Claim to the extent it is allowed by an order that is not a Final Order.

"<u>Approved Budget</u>" means the budget agreed to by the Debtor and the Prepetition Secured Lender and attached as Exhibit A to the Cash Collateral/DIP Order (as may be amended or otherwise modified from time to time pursuant to the terms of the Cash Collateral/DIP Order).

"<u>Ballot</u>" means the form of ballot which the Debtor will transmit to Creditors or Interest Holders who are, or may be, entitled to vote on the Plan.

"<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code, as applicable to the Chapter 11 Case.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware, together with the District Court as to matters as to which the reference is withdrawn under 28 U.S.C. § 157(d).

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"<u>Beneficial Interest</u>" means an interest that entitles the holder thereof to a Distribution in accordance with the Distribution Trust Agreement.

"<u>Beneficiary</u>" means the holder of a Beneficial Interest, whether individually or as agent on behalf of other entities.

"<u>Business Day</u>" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"<u>Cash</u>" means cash, wire transfer, certified check, cash equivalents, and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issues by banks, and commercial paper of any Person, including interest accrued or earned thereon.

"<u>Cash Collateral/DIP Order</u>" means the interim and final order (a) authorizing the Debtor to utilize Cash collateral, (b) approving the DIP Facility, (c) granting adequate protection to the Prepetition Secured Lender and (d) granting related relief.

"<u>Chapter 11 Case</u>" means the chapter 11 case to be styled *In re Adara Enterprises Corp.* to be filed in the United States Bankruptcy Court for the District of Delaware under chapter 11 of the Bankruptcy Code.

"<u>Charter Documents</u>" means the articles of incorporation and the bylaws of the Debtor or Reorganized Debtor, as applicable, and any amendments to the foregoing.

"<u>Claim</u>" has the meaning assigned to such term by section 101(5) of the Bankruptcy Code.

2

"Claim Objection Deadline" means (a) for all Claims other than Claims of Governmental Units, the first Business Day that is 60 days after the Effective Date and (b) for Claims of Governmental Units, the first Business Day that is 60 days after the Governmental Unit Bar Date, as each such date may be extended by order of the Bankruptcy Court.

"Class" means one of the classes of Claims or Equity Interests described in Article III of the Plan.

"Clerk" means the Clerk of the Bankruptcy Court.

"Closing" means the closing of the transactions contemplated under Article VI of the Plan.

"Confirmation Date" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means the order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Consideration" means $8,500,000 in Cash to be funded by the Plan Sponsor on the Effective Date, less any amount that the Plan Sponsor or its designee may provide to the Debtor under the DIP Facility.  For the avoidance of doubt, and notwithstanding anything to the contrary set forth in the Plan, any amounts advanced to the Debtor in respect of the DIP Facility will be credited against the $8,500,000 as part of the remittal of Consideration and will not be repaid in Cash; provided that nothing herein shall negate or modify the obligation of the Debtor to repay all Restructuring Expenses in full in Cash.

"Creditor" means any Person that holds a Claim against the Debtor that arose on or before the Effective Date, or a Claim against the Debtor of any kind specified in sections 502(f), 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether such Person filed a proof of claim against the Debtor.

"Cure Amount" means the amount of Cash required to cure defaults necessary to assume an Executory Contract under 11 U.S.C. § 365(b) as determined by the Bankruptcy Court or pursuant to any agreement among the Reorganized Debtor and the other party/ies to the Executory Contract and as listed in the Schedule of Assumed Contracts and Unexpired Leases.

"Debtor" means Adara Enterprises Corp., a Delaware corporation and the debtor in the Chapter 11 Case.

"DIP Facility" means the postpetition loan or loans made by ESW Holdings to the Debtor pursuant to the Cash Collateral/DIP Order.

3

"DIP Obligations" means all obligations of the Debtor under the DIP Facility. For the avoidance of doubt, the Restructuring Expenses of ESW Holdings shall be repaid in Cash.

"Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by either a Final Order or pursuant to a settlement, or (b)(i) is listed in the Schedules of Assets and Liabilities at zero or as contingent, disputed, or unliquidated, including by amendment of such Schedules of Assets and Liabilities, and as to which no proof of claim has been filed for such Claim, and (ii) as to which a bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order, or applicable law, or which is not deemed Allowed by the terms of the Plan.

"Disclosure Statement" means the Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Adara Enterprises Corp. dated April 21, 2021 and filed by the Debtor with the Bankruptcy Court, as may be amended or supplemented.

"Disputed Claim" means a Claim as to which a proof of claim or interest has been Filed or deemed Filed under applicable law, as to which an objection has been Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or order of the Bankruptcy Court and has not been overruled or denied by a Final Order.

"Disputed Cure Amount" means, with respect to an Executory Contract for which a Cure Objection is filed, the amount that the counterparty to such Executory Contract asserts is necessary to assume such Executory Contract under 11 U.S.C. § 365(b).

"Distribution" means any distribution made under the Plan.

"Distribution Date" means any date that a Distribution is made under the Plan or the Distribution Trust Agreement.

"Distribution Reserve" means a reserve established to hold, in one or more segregated accounts to be established by the Distribution Trust, Cash equal to (a) the aggregate of (i) Cash that would have been distributed on the Distribution Date on account of Disputed or undetermined (A) Administrative Claims, provided that with respect to Administrative Claims for which applications for compensation of professionals or other Persons retained or to be compensated pursuant to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code are or will be pending but are then undetermined, the amount of Cash deposited shall be the amount sought by such Persons, in each case less any monies already received by such professional or Person, (B) Other Priority Claims, (C) Priority Tax Claims, (D) Other Secured Claims and (E) General Unsecured Claims; plus (ii) accrued interest on all Cash in the Distribution Reserve; plus (iii) Cash in the amount of all taxes previously incurred by the Debtor (and not paid or otherwise provided for under the Plan); plus (iv) the Distribution Trust Operating Reserve; or (b) such lesser amount as may be determined in the reasonable discretion of the Distribution Trustee and approved by the Bankruptcy Court.

20602235.4
237312-10001

"Distribution Trust" means the trust established under the Plan and the Distribution Trust Agreement.

"Distribution Trust Agreement" means the trust agreement that establishes the Distribution Trust and governs the powers, duties, and responsibilities of the Distribution Trustee. The Distribution Trust Agreement shall be part of the Plan Supplement.

"Distribution Trust Assets" means the Consideration, *plus* the Effective Date Cash, *less* any amounts paid by the Debtor on the Effective Date.

"Distribution Trust Operating Expenses" means the reasonable costs and expenses, including professional fees, of the Distribution Trustee in administering the Distribution Trust.

"Distribution Trust Operating Reserve" means such reserve of Cash determined from time to time by the Distribution Trustee pursuant to the Distribution Trust Agreement to be reasonably necessary to pay Distribution Trust Operating Expenses, including (a) the unpaid liabilities, debts, or obligations of the Distribution Trust; (b) the fees and expenses of the Distribution Trustee; (c) all fees and expenses of professionals retained by the Distribution Trust; (d) funds sufficient to pay all pre- and post-Effective Date amounts required to be paid to the U.S. Trustee pursuant to Section 4.3 of the Plan; and (e) any and all other costs associated with the liquidation or preservation of the Distribution Trust Assets.

"Distribution Trustee" means the Person appointed to administer the Distribution Trust with such rights, duties, and obligations as set forth in the Distribution Trust Agreement.

"District Court" means the United States District Court for the District of Delaware.

"Effective Date" means the first Business Day on which (a) the Confirmation Date has occurred, (b) the Confirmation Order is not stayed, (c) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan, and (d) the Reorganized Debtor has Filed a notice of the Effective Date.

"Effective Date Cash" means all Cash reflected on the Debtor's balance sheet as of the Effective Date, if any.

"Equity Interest" means any and all Preferred Equity Interests and Other Equity Interests. For the avoidance of doubt, all Equity Interests reflected as outstanding in the stock transfer ledger or similar register or record of the Debtor on the Petition Date shall be deemed to be Allowed Equity Interests.

"Estate" means the estate created upon the filing of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, together with all rights, claims, and interests appertaining thereto.

5

"Estate Property" means all right, title, and interest in and to any and all property of every kind or nature owned by the Debtor or its Estate on the Effective Date as defined by 11 U.S.C. § 541.

"ESW Holdings" means ESW Holdings, Inc.

"ESW Parties" means (a) ESW Holdings, Inc. in its capacities as the Plan Sponsor and Prepetition Secured Lender; and (b) ESW Capital, LLC in its capacity as the Preferred Equity Interest Holder.

"Exculpated Parties" (each one, an "Exculpated Party") means (a) the Debtor, (b) the directors and officers of the Debtor serving at any time during the pendency of the Chapter 11 Case, and (c) the attorneys, advisors and Professionals or Bankruptcy Court-retained agents of the Debtor, each in their respective capacities as such. Any affiliate or other party related to any Exculpated Party shall also be an Exculpated Party to the extent that such affiliate or related party is alleged or charged to be directly or indirectly liable on any derivative, vicarious liability, alter ego, or other theory for imposing liability on an affiliate or related party for the conduct or liability of the Exculpated Party related to any action taken by the Exculpated Party in connection with the Chapter 11 Case from the Petition Date to the Effective Date and solely to the extent that the Exculpated Party is entitled to exculpation on a direct claim.

"Executory Contracts" means executory contracts and unexpired leases as such terms are used in 11 U.S.C. § 365, including all operating leases, capital leases, and contracts to which the Debtor is a party or beneficiary on the Confirmation Date.

"File or Filed" means (a) when used in reference to a request for relief encompassed within a pleading or other document, when and on such date as such pleading or other document is entered on the docket of the Bankruptcy Court in the Chapter 11 Case and (b) when used in reference to a proof of claim, when and on such date as such proof of claim is entered on the claims register in the Chapter 11 Case.

"Final Order" means an order or judgment which has not been reversed, stayed, modified, or amended and as to which the time for appeal has expired and no stay has been obtained.

"General Bar Date" means the date established by the Bankruptcy Court as the deadline for any Person or entity that is not a Governmental Unit to file proofs of Claim.

"General Unsecured Claim" means any Claim against the Debtor, including all Intercompany Claims, other than (a) a Prepetition Secured Lender Claim; (b) an Other Secured Claim, (c) an Administrative Claim, (d) an Other Priority Claim, or (e) a Priority Tax Claim.

"GlassBridge" means GlassBridge Enterprises, Inc.

"GlassBridge Guaranty" means that certain Limited Recourse Guaranty dated as of July 21, 2020 by GlassBridge in favor of Prepetition Secured Lender.

6

"GlassBridge Pledge" means that certain Stock Pledge Agreement dated as of July 21, 2020 by GlassBridge in favor of Prepetition Secured Lender.

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"Governmental Unit Bar Date" means the date established by the Bankruptcy Court as the deadline for Governmental Units to file proofs of claim.

"Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"Interest Holder" means any record or beneficial holder or owner of an Equity Interest.

"Intellectual Property" means intellectual property, including, without limitation, the following: (i) all patents and patent applications, domestic or foreign, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, all rights to sue for past, present, or future infringement thereof, all rights arising therefrom and pertaining thereto and all reissues, divisions, continuations, renewals, extensions, and continuations-in-part thereof; (ii) all copyrights and applications for copyright, domestic or foreign, together with the underlying works of authorship (including titles), whether or not the underlying works of authorship have been published and whether said copyrights are statutory or arise under the common law, and all other rights and works of authorship, all computer programs, computer databases, computer program flow diagrams, source codes, object codes and all tangible property embodying or incorporating any copyrights, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, and all other rights, claims, and demands in any way relating to any such copyrights or works, including royalties and rights to sue for past, present, or future infringement, and all rights of renewal and extension of copyright; (iii) all state (including common law), federal, and foreign trademarks, service marks, and trade names, and applications for registration of such trademarks, service marks, and trade names, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, whether registered or unregistered and wherever registered, all rights to sue for past, present, or future infringement or unconsented use thereof, all rights arising therefrom and pertaining thereto and all reissues, extensions, and renewals thereof; (iv) all trade secrets, trade dress, trade styles, logos, other source of business identifiers, mask-works, mask-work registrations, mask-work applications, software, confidential and proprietary information, customer lists, license rights, advertising materials, operating manuals, methods, processes, know-how, algorithms, formulae, databases, quality control procedures, product, service and technical specifications, operating, production and quality control manuals, sales literature, drawings, specifications, blue prints, descriptions, inventions, name plates, catalogs, internet websites, and internet domain names and associated URL addresses; (v) the entire goodwill of or associated with the businesses now or hereafter conducted by the Debtor or Reorganized Debtor connected with and symbolized by any of the aforementioned properties and assets; and (vi) all accounts, payment intangibles, commercial tort claims and other rights to payment, all other proprietary rights or other intellectual or other similar property, and all other general intangibles associated with or arising out of any of the aforementioned properties and assets and not otherwise described above, and all proceeds of any Intellectual Property.

7

"Intercompany Claims" means all claims against the Debtor held by GlassBridge or any of its affiliates.

"IP Grant" means (i) a one-time current copy of any software code owned or the maintained by the Reorganized Debtor as of the Effective Date, and (ii) a fully paid-up perpetual license (including the right to create derivative works) to utilize the intellectual property and software owned by the Debtor as of the Effective Date, provided that such license shall be solely for use within the sports industry, as further described in the Plan Supplement.

"Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

"Loan and Security Agreement" means that certain Loan and Security Agreement entered into as of July 21, 2020 among ESW Holdings, as lender, Adara Enterprises Corp. (f/k/a Imation Enterprises Corp.), as borrower, and GlassBridge, as parent guarantor, as amended, supplemented or otherwise modified from time to time.

"Material Adverse Change" means any material adverse change or the occurrence of any fact or circumstance which materially and adversely affects the rights, remedies, or benefits of, or conferred by, the transactions contemplated by the RSA, including without limitation, strike, lockout, war, terrorism, act of God, fire or other casualty, unusually adverse weather conditions, inability to obtain labor or materials, or governmental restriction or other act or thing; *provided, however*, for the avoidance of doubt, no Material Adverse Change shall be deemed to have occurred as a result of: (i) the filing of the Chapter 11 Case; (ii) the actions required to be taken by the Debtor to conform to and comply with the RSA, the documents entered into in connection with the Cash Collateral/DIP Order (or the DIP Facility), the Budget, or the Plan; and (iii) any actions the Debtor takes at the request of or with the consent of the Plan Sponsor.

"New Equity" means the all of the equity interests in the Reorganized Debtor, issued on the Effective Date, to the Preferred Equity Interest Holder and to the Prepetition Secured Lender, in the total amount of 1,000 shares, free and clear of all Liens, Claims, Equity Interests, and encumbrances of any kind, except as provided in the Plan.

"New Equity Holders" means the owners of the New Equity, including, without limitation, their successors and assigns.

"Ordinary Course Creditor" means a Creditor with an Ordinary Course Liability.

"Ordinary Course Liability" means an Administrative Claim (other than a Professional Compensation Claim or an Administrative Tax Claim), including the DIP Facility, based on liabilities incurred in the ordinary course of the Debtor's business operations solely to the extent provided for in the Approved Budget. For the avoidance of doubt, all Claims for compensation or reimbursement of expenses of counsel to the Prepetition Secured Lender and Plan Sponsor shall be payable as Ordinary Course Liabilities to the extent set forth in the Approved Budget.

20602235.4
237312-10001

"<u>Other Equity Interests</u>" means any interest in the Debtor, including any interest represented by ownership of common stock or interests other than the Preferred Equity Interests, including to the extent provided by applicable law, any purchase right, warrant, stock option, or other equity or debt security (convertible or otherwise) evidencing or creating any right or obligation to acquire or issue any of the foregoing. For the avoidance of doubt, all Other Equity Interests are held by GlassBridge.

"<u>Other Priority Claims</u>" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code.

"<u>Person</u>" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof, or any other entity, including the Debtor and the Released Parties.

"<u>Petition Date</u>" means April 22, 2021, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

"<u>Plan</u>" means the Prepackaged Chapter 11 Plan of Reorganization of Adara Enterprises Corp., dated April 21, 2021, as it may be amended or modified.

"<u>Plan Documents</u>" means, collectively, those material documents executed or to be executed in order to consummate the transactions contemplated under the Plan, which will be filed with the Bankruptcy Court on or before the Plan Supplement Deadline, including the Distribution Trust Agreement and any other documents that make up the Plan Supplement.

"<u>Plan Sponsor</u>" means ESW Holdings or an affiliate or subsidiary, in such capacity.

"<u>Plan Supplement</u>" means, collectively, any such documents as are referenced as such in the Plan to be Filed hereafter to supplement or clarify aspects of the Plan.

"<u>Plan Supplement Deadline</u>" means the date on which the Plan Supplement shall be Filed with the Bankruptcy Court, which date shall be at least seven (7) days prior to the deadline to object to confirmation of the Plan or such other date as may be approved by the Bankruptcy Court without further notice to parties in interest.

"<u>Post-Confirmation Service List</u>" means the list of those parties who have filed, on or after the Confirmation Date, renewed requests to receive documents pursuant to Bankruptcy Rule 2002.

"<u>Preferred Equity Interests</u>" means any interest in the Debtor represented by ownership of preferred stock, including all Series A Preferred Stock. For the avoidance of doubt, all Preferred Equity Interests are held by the Preferred Equity Interest Holder.

"Preferred Equity Interest Holder" means ESW Capital, LLC.

"Prepetition Secured Lender" means ESW Holdings, in its capacity as lender under the Loan and Security Agreement.

"Prepetition Secured Lender Claim" means the Prepetition Secured Lender's secured, perfected first priority prepetition Claim totaling not less than $12,849,359, consisting of principal in the aggregate amount of $11,000,000, plus interest, fees, and costs, which includes all claims and rights to payment. Additionally, on the Effective Date, in lieu of treatment as an Administrative Claim, all unpaid interest payments accrued by the Prepetition Secured Lender as Adequate Protection under the Cash Collateral/DIP Order shall be added to the Prepetition Secured Lender Claim and treated as a such hereunder. The Prepetition Secured Lender Claim shall be treated as an Allowed Claim, without the need for the Prepetition Secured Lender to file any proof of claim.

"Priority Tax Claim" means any Claim held by a Governmental Unit entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

"Professional" means a professional employed in the Chapter 11 Case pursuant to a Final Order under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

"Professional Compensation Claim" means a Claim for compensation or reimbursement of expenses of a Professional retained in the Chapter 11 Case, and requested in accordance with the provisions of 11 U.S.C. §§ 327, 328, 330, 331, 503(b) and/or 1103.

"Rejection Claim Bar Date" means either (as applicable) (i) in respect to Executory Contracts rejected pursuant to a revocation notice filed pursuant to Section 8.3(b) of the Plan, the date that is thirty (30) days after service of such revocation notice, or (ii) as to all other Executory Contracts, the date that is thirty (30) days after the Effective Date.

"Released Parties" (each one, a "Released Party") means (a) the Debtor; (b) the Plan Sponsor and its affiliates, including without limitation, the Prepetition Secured Lender and the Preferred Equity Interest Holder; (c) GlassBridge and its affiliates and (d) the directors, officers, agents, attorneys, accountants, consultants, equity holders, financial advisors, investment bankers, professionals, experts, and employees of any of the foregoing, each in their respective capacities as such. Any affiliate or other party related to any Released Party shall also be a Released Party to the extent that such affiliate or related party is alleged or charged to be directly or indirectly liable on any derivative, vicarious liability, alter ego, or other theory for imposing liability on an affiliate or related party for the conduct or liability of the Released Party; provided that any holder of a Claim or Equity Interest that files an objection to the releases contained in the Plan shall not be a "Released Party."

"Releasing Parties" (each one, a "Releasing Party") means each of (a) GlassBridge; (b) ESW Holdings, Inc.; (c) ESW Capital, LLC; and (d) the affiliates, subsidiaries, directors, officers, agents, attorneys, accountants, consultants, equity holders, financial advisors,

10

investment bankers, professionals, experts, and employees of any of the foregoing, each in their respective capacities as such.

"Remaining Cash" means all remaining Distribution Trust Assets following the payment in full of all Allowed Claims and other payments contemplated or required to be paid under the Plan.

"Reorganized Debtor" means the Debtor as it exists after the Effective Date.

"Restructuring Expenses" means the reasonable and documented fees and expenses incurred by GlassBridge, the Plan Sponsor, Prepetition Secured Lender and Preferred Equity Interest Holder in connection with the Restructuring Transaction (as defined in the RSA), payable in accordance with the terms of the applicable agreements, engagement or fee letters executed with such parties, and any applicable law or orders of the Bankruptcy Court, and without the requirement of the filing of retention applications, fee applications, or any other applications in the Chapter 11 Case, which shall be Allowed as Administrative Expense Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.

"Rights of Action" means any and all claims, debts, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtor or its Estate.

"RSA" means the Restructuring Support Agreement, dated April 21, 2021 and entered into by and among the Debtor, the Prepetition Secured Lender, and the Plan Sponsor (as amended, supplemented, or otherwise modified from time to time).

"Schedule of Assumed Contracts and Unexpired Leases" means the schedule identifying the Executory Contracts to be assumed by the Reorganized Debtor under the Plan. The Schedule of Assumed Contracts and Unexpired Leases is attached as Exhibit B to the Plan.

"Schedules of Assets and Liabilities" means the Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with section 521(a)(1) of the Bankruptcy Code, including as amended by the Plan or any Plan Supplement.

"Treasury Regulations" means the regulations promulgated under the Internal Revenue Code by the Department of the Treasury of the United States.

"U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

"Voting Record Date" means April 21, 2021.

20602235.4
237312-10001

**EXHIBIT B**
**Schedule of Assumed Contracts and Unexpired Leases**

[To be determined]

**EXHIBIT C**
**List of Debtor Subsidiaries Remaining in Effect as Reorganized Debtor Interests**

- GlassBridge Multi Strategy, GP LLC, a Delaware limited liability company
- GlassBridge Quant Strategy, GP LLC, a Delaware limited liability company

2